J-S17030-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WILDER GONZALEZ | : | |
| | : | |
| Appellant | : | No. 1898 EDA 2018 |

Appeal from the Judgment of Sentence Entered June 20, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0007574-2017

BEFORE:  BENDER, P.J.E., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OLSON, J.:                        **FILED MAY 31, 2019**

Appellant, Wilder Gonzalez, appeals from the judgment of sentence entered on June 20, 2018 in the Criminal Division of the Court of Common Pleas of Philadelphia County.  We affirm.

The trial court aptly summarized the facts and procedural history in this case as follows.

> This case involves an incident that occurred in the early morning hours of August 20, 2017, between Appellant and the complaining witness, [R.J. (Victim)].  [Victim] testified at trial that [she] and Appellant [met two years prior] and dated for about seven months until their relationship ended in February 2017.  During [their] relationship, [Victim] and Appellant lived together at her apartment [on] Magee Street in Philadelphia, PA.  After the relationship ended, [Victim obtained] a Protection from Abuse (PFA) order from the Philadelphia Family Court against Appellant to get him out of her apartment.  The PFA order became final on August 1, 2017, and was [in force] for three years.
>
> [Victim] testified that on the night of August 19, 2017, she was out for a party at a bar and she saw the Appellant[.]  When [Victim] left the bar with a friend later that night around 2:30

a.m., she testified that Appellant followed her to her house on Magee Street. Appellant let himself into her house with the copy of the keys that he still had and went up to the bedroom. [Victim] did not give him permission to be inside of her house. [Victim] testified that she told Appellant to leave and she said he stated "he could not leave because I [Victim] was in his room and that it will be his room whether I [Victim] like it or not." [The argument between Victim and Appellant caused] the neighbors [to call] the police to come to the house. When the police officers arrived, [Victim] told them about the PFA order she had against Appellant but they could not find it in their [computer] system. The officers still had Appellant leave the house. After the police left, about ten minutes later, Appellant came back to [Victim's] house. [Victim] testified that Appellant went into her room again and she again told him to leave but Appellant stated "I'm his woman and he's going to be with me. And he will leave whenever he wanted to leave." [Victim] testified that she was going to try to call the police but Appellant grabbed her phone [and] locked the bedroom door. Appellant then got on top of [Victim] and said "you're my woman and you're going to be my woman." Appellant then slapped [Victim] in the face with a closed fist and threw her on the bed. He then grabbed both her arms and was holding her down when he started to kiss her body [and rape] her. [Victim] testified that she told Appellant not to do this and that she was going to report him. [In response,] Appellant said "I don't care … that I [Victim] was always going to be his and if I [Victim] wasn't, he was going to kill me." [Victim] testified that this went on for about 15 minutes. [Victim] did try to fight by kicking Appellant and she eventually was able to kick Appellant to the floor. Appellant then grabbed [Victim] by the hair and pulled her around but she was able to get away, open the door and get out of the bedroom. [Victim] testified that when she got out of the room she ran down to the basement where her renter, [I.D.], lived and they locked the basement door. Appellant was banging on the door and yelling at them that he was going to kill them. After about 15-20 minutes[,] Appellant finally left the house.

[Victim] testified that she stayed in the basement until the following morning because she was scared. She called her friend [A.R.] and told her that she needed to talk to her in person. [A.R.] came to the house the next day. [A.R.] testified that when she went over to [Victim's] house, [Victim] began crying as she started to tell her about what happened with Appellant. [A.R.] also testified that [Victim] had bruises on her face and arm and

that [Victim] told her that Appellant assaulted her and had sex with her against her will. The two of them then went over to the police station that night to report what happened. [Victim] gave her statement to the police and was checked out by a doctor, and did not return home until early morning on August 22, 2017[.]

Appellant had a different version of what happened[. At trial, Appellant testified] that [Victim] had allowed him to move back into her house even after the PFA order and he had been living there for about a week when this incident occurred. On the night of August 19, 2017, Appellant testified that after he got home from work, he and [Victim] had sex and then the two of them went out to a bar together[,] getting home around 3:00-3:30 [a.m.] Appellant testified that they were both drunk and that [Victim] started with a jealousy fit arguing with him and then pulling him from the bed trying to hit him[. At that time, Appellant] grabbed [Victim] by the arms to try to calm her down. Appellant testified that [Victim] then threw him onto the bed almost breaking his arm and[, afterwards,] she went out to call the police. When the police came to the house, Appellant testified that he met them outside and told them that his girlfriend was inside the house acting crazy. According to Appellant, [Victim] then came out with the PFA order to show the police and the police could not find it in their [computer] system. Appellant [testified] that the police [told] him to leave the house until everything calmed down. Appellant left but testified he came back about ten minutes later and [Victim] was in the basement, so he just went upstairs to sleep since he had to work the next morning.

On August 22, 2017, [Appellant] was arrested and charged with burglary, rape, sexual assault, unlawful restraint, contempt for violation of [PFA o]rder, simple assault, and recklessly endangering another person. On April 17, 2018, Appellant waived his right to a jury [trial] and proceeded to a bench trial before the [c]ourt. On that date, the [trial c]ourt found Appellant guilty of burglary, rape, unlawful restraint, and contempt for violation of a PFA order. On June 20, 2018, the [trial c]ourt sentenced Appellant to an aggregate sentence on all the charges of three to six years['] incarceration followed by three years['] probation.

Appellant filed this timely appeal of the [trial c]ourt's decision on June 22, 2018. On June 26, 2018, the [trial c]ourt ordered Appellant to file a Pa.R.A.P. 1925(b) [concise] statement of matters complained of on appeal within 21 days. Appellant requested[, and the Court granted,] an extension of time due to

the lack of transcription of the notes of testimony. Appellant filed [his concise statement] on August 22, 2018, after all the notes of testimony became available.

Trial Court Opinion, 9/19/18, at 1-5 (miscellaneous capitalization omitted).

Appellant identifies a single issue for our review.

Was [Appellant] erroneously convicted of unlawful restraint, [where] there was insufficient evidence to establish that [Victim] was restrained under [] circumstances exposing her to [the] risk of serious bodily injury?

Appellant's Brief at 3.

In his sole issue, Appellant argues that the evidence was insufficient to demonstrate that he restrained Victim under conditions that exposed her to a risk of serious bodily injury. This claim merits no relief.

Appellant's claim challenges the sufficiency of the evidence. Hence, our standard of review is as follows:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Montanez-Castro*, 198 A.3d 377, 380 (Pa. Super. 2018)

(internal citation and original brackets omitted).

A person is guilty of unlawful restraint under 18 Pa.C.S.A. § 2902(a)(1) where he knowingly "restrains another unlawfully in circumstances exposing him to [the] risk of serious bodily injury." 18 Pa.C.S.A. § 2902(a)(1).

In rejecting Appellant's sufficiency challenge, the trial court reasoned as follows.

> Here, based on [Victim's] version of events from the early morning of August 20, 2017, there was evidence that she was threatened by Appellant, struck by him, and that she forcibly resisted his actions. [Victim's] testimony at trial was that Appellant went into [Victim's] room despite the PFA order and he would not leave after she told him to leave. [Victim] testified that she was going to try to call the police but Appellant grabbed her phone [and] locked the bedroom door. Appellant then got on top of [Victim], slapped her in the face with a closed fist, and threw her on the bed. He then grabbed both her arms and was holding her down when he started to kiss her body [and rape] her. [Victim attempted] to resist by kicking Appellant and she eventually was able to get away, open the door and get out of the bedroom. Based upon this testimony, which is similar to the evidence [presented in prior appellate cases], the [trial c]ourt reasonably inferred that [Appellant unlawfully restrained [Victim] under conditions that exposed her to a risk of serious bodily injury in violation of 18 Pa.C.S.A. § 2902(a)(1).]
>
> Furthermore, questions of witness credibility and the weight to be afforded the evidence are within the sole province of the finder of fact, who is free to believe all, part, or none of the evidence. *Commonwealth v. Woods*, 638 A.2d 1013, 1015 (Pa. Super. 1994); *Commonwealth v. Mayfield*, 585 A.2d 1069 (Pa. Super. 1991). Here, the court found that the testimony of [Victim] was entirely reasonable and credible and did not believe Appellant's version of what occurred that night.

Trial Court Opinion, 9/19/18, at 10.

We concur in the trial court's assessment that the evidence adduced by the Commonwealth was sufficient to support Appellant's conviction for unlawful restraint. Under our standard of review, it is within the province of the court, serving as the finder of fact, to credit all, some, or none of the evidence. The trial court here credited Victim's and rejected Appellant's version of events. Viewing the testimony of Victim in the light most favorable to the Commonwealth, there was sufficient evidence to support Appellant's unlawful restraint conviction. No relief is due.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/31/19